UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAMZIDDIN S. TROWELL,<br><br>                Plaintiff,<br><br>-against-<br><br>CORRECTIONAL OFFICER ELLIS #16061,<br>CORRECTIONAL OFFICER CLARKE<br>#18610, and THE CITY OF NEW YORK,<br><br>                Defendants. | 23-CV-9832 (JGLC)<br><br>**OPINION AND ORDER** |

JESSICA G. L. CLARKE, United States District Judge:

    Defendants move to dismiss this lawsuit filed by incarcerated *pro se* plaintiff Ramziddin S. Trowell. Because Plaintiff has failed to exhaust administrative remedies, his claims are dismissed without prejudice.

### BACKGROUND

    The following facts are, unless otherwise noted, taken from the Complaint and presumed to be true for the purposes of this Order. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

    Incarcerated *pro se* Plaintiff Ramziddin S. Trowell was detained at the North Infirmary Command ("NIC") on Rikers Island on October 18, 2023. ECF No. 1 ("Complaint" or "Compl.") at 4. Plaintiff was due to be at a Bronx County courthouse that morning. *Id.* At 7:45 a.m., Defendant Ellis, a transportation officer, arrived at NIC and stated that she was the pickup bus for Bronx Court. *Id.* At the time, Plaintiff, waiting in intake, was in possession of a walking cane for medical reasons. *Id.* Ellis asked Plaintiff whether Plaintiff had a medical pass for the cane. *Id.* An intake officer, non-party Officer Smith, informed Ellis that Plaintiff suffered from "a medical condition and that the [pass] is stapled on the back of the ID card." *Id.*

According to Plaintiff, after Ellis inspected the medical note, Ellis stated: "[I'm] not taking this mother fucker to court because his medical pass is old and outdated." *Id.* Though Smith informed Ellis that administrators would be arriving shortly to sign off on the medical pass, Ellis then stated: "[W]hat? [I'm] not waiting on the fucken Dept you got me fucked all the way up this nigga wont be seeing the judge today come open this fucking gate and let me out you fat ugly mother fucker[.]" *Id.* Ellis then left NIC without Plaintiff. *Id.*

Plaintiff was then escorted back to his cell to await later transportation to court. *Id.* While in his cell, Plaintiff made a 311-call complaint about Ellis's refusal to take him to court. *Id.* Six hours later, Plaintiff returned to intake to be brought to court. *Id.* Ellis was present and "didn['t] look [too] happy." *Id.* According to Plaintiff, Ellis stated: "[S]o you like calling 311 on people I see I got something for your snitch ass [I'm] going to make sure you miss the go back bus." *Id.*

Plaintiff states that when he arrived at court, he was placed in a cell "w[h]ere nobody could hear you calling for help[.]" *Id.* Between 2:30 p.m. and 3:00 p.m., Plaintiff left the cell for his hearing. *Id.* Afterward, Plaintiff asked an officer when the next return bus to NIC was, to which the officer responded that three buses were presently outside the courthouse. *Id.* Other incarcerated individuals who were detained alongside Plaintiff overheard the officer's statement and began "banging and calling for the officer." *Id.* The officer "refused to acknowledge them calling for him." *Id.*

Thereafter, while Plaintiff was confined in the court cell, another incarcerated person flooded the cell with toilet water, urine, and defecation. *Id.* at 5. The waste reached Plaintiff's cell. *Id.* At some point, an officer arrived to turn off the water supply for all the detained individuals. *Id.* Plaintiff states: "[F]or 5 hours I was left in the cell with other people['s] bodily

waste floating around on the cell floor. . . . [The] officer . . . left us screaming and banging for help[.]" *Id.*

As Plaintiff and the other detained individuals continued to complain, some correction officers "tr[ied] to calm everybody down and when that didn['t] work they started moving people to the front[.]" *Id.* Officers eventually transported Plaintiff later in the evening and Plaintiff arrived back at NIC at 8:15 p.m. *Id.*

Plaintiff filed this Complaint weeks after the incident, on November 3, 2023, against Officer Ellis, Officer Clark or Clarke (an officer at the courthouse), the New York Department of Correction, and "The Owners of Rikers Island." ECF No. 1. The Court dismissed claims against the Department of Correction ("DOC"), added as a defendant the City of New York, and dismissed claims against "The Owners of Rikers Island." ECF No. 7. On May 15, 2024, Defendants filed a motion to dismiss the Complaint for, among other things, failure to exhaust administrative remedies. ECF No. 14; 15 ("Mot."). Plaintiff opposes. ECF No. 21.

## DISCUSSION

The Court sets forth the legal standard for exhaustion of administrative remedies under the Prison Litigation Reform Act ("PLRA"), as well as the specific procedure for such exhaustion set out by the DOC. Applying those standards here, the Court finds that Plaintiff has not exhausted administrative remedies and that his claims must be dismissed without prejudice to renewal.

### A. Statutory Exhaustion Requirement

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42

3

U.S.C. § 1997e(a). "Exhaustion is 'mandatory' and 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,'" or alleged excessive force, the denial of adequate medical care, or some other wrong. *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016).

"The PLRA requires 'proper exhaustion' of administrative remedies, meaning exhaustion in 'compliance with an agency's deadlines and other critical procedural rules.'" *Lucente v. County of Suffolk*, 980 F.3d 284, 311 (2d Cir. 2020) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)). Proper exhaustion "means using all steps that the agency holds out, and doing so *properly* . . . ." *Woodford*, 548 U.S. at 90 (emphasis in original). To exhaust administrative remedies under the PLRA, an incarcerated individual must "complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88).

However, incarcerated individuals need not comply with the exhaustion requirement when administrative remedies are "unavailable." *Ross v. Blake*, 578 U.S. 632, 642 (2016). An administrative procedure will be treated as unavailable for purposes of this exemption in at least three circumstances: (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams v. Priatno*, 829 F.3d 118, 123–24 (2d Cir. 2016) (quoting *Ross*, 578 U.S. at 633–34). The Second Circuit has since reasoned that "[t]he test for deciding whether the

4

ordinary grievance procedures were available must be an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Lucente*, 980 F.3d at 311–12 (quoting *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004) (*abrogated on other grounds by Ross*, 578 U.S. at 635)).

### B. DOC's Administrative Procedures

Administrative grievance procedures at Rikers Island are governed by the Inmate Grievance and Request Program ("IGRP"). *Hickman v. City of New York*, No. 20-CV-4699 (RA), 2021 WL 3604786, at *3 (S.D.N.Y. Aug. 12, 2021). The Court takes judicial notice of the IGRP. *See Sanders v. City of New York*, No. 16-CV-7246 (PGG), 2018 WL 3117508, at *4 n.1 (S.D.N.Y. June 25, 2018) (cleaned up) ("It is a common practice in this District to take judicial notice of the version of the IGRP in effect at the time of the events giving rise to a prisoner's claim."). As DOC Directive 3376R-A ("IGRP Directive") was the version of the IGRP in effect in October 2023, it is the governing administrative grievance procedure in this action. *See* N.Y.C. Dep't of Corr., Directive 3376R-A (effective Dec. 10, 2018), available at https://www.nyc.gov/assets/doc/downloads/directives/Directive_3376R-A.pdf (last visited February 18, 2025).

The IGRP provides a four-step administrative review and appeals process for grievances from individuals incarcerated by the DOC. First, an individual must submit a grievance through the filing of a Form 7101R or a 311-call complaint. Within seven business days, the Grievance Coordinator will determine whether to dismiss, investigate, or refer the complaint. *Id.* § V–VI. Second, the complainant must appeal to the commanding officer, who must respond within five business days. *Id.* § VII. Third, the complainant must appeal to the division chief, who must respond within five business days. *Id.* § VIII. Finally, if the complainant is still unsatisfied with

the disposition, they must appeal to the DOC Central Review Office Committee ("CORC"). *Id.* § IX.

An incarcerated individual "must take each of the four steps to exhaust the administrative grievance process" unless administrative remedies are "unavailable." *Sanders v. City of New York*, No. 16-CV-7426 (PGG), 2018 WL 3117508, at *4 n.2 (S.D.N.Y. June 25, 2018) (internal citation omitted). Moreover "it is well established that, even if an inmate does not receive a response to his grievance, he fails to exhaust administrative remedies if he does not avail himself of the available appeals process." *Massey v. City of New York*, No. 20-CV-5665 (GBD) (DF), 2021 WL 4943564, at *7 (S.D.N.Y. Aug. 30, 2021) (cleaned up). "[I]t is also well settled that 'proper exhaustion' requires an inmate to not only file an initial grievance, but also to exhaust his claims through each level of the specified grievance process." *Id*.

### C. Plaintiff Has Failed to Exhaust Administrative Remedies

The Court understands Plaintiff to allege that he was denied timely transportation to the courthouse on October 18, 2023, that he was retaliated against by Officer Ellis for making a 311-call complaint, and that he was subject to unconstitutional conditions of confinement as a result of that retaliation while detained at the courthouse. However, the Complaint only reflects that Plaintiff followed the first step of the IGRP Directive for the denial of timely transportation to the courthouse. Plaintiff does not appear to have followed steps two through four of the IGRP Directive on this matter. Plaintiff also does not appear to have filed first-step grievances for the alleged retaliation or the unconstitutional conditions of confinement claims.

It appears beyond doubt that Plaintiff failed to exhaust his administrative remedies before filing the claims in this lawsuit. The events alleged occurred on October 18, 2023, and Plaintiff's complaint was filed on the Court's docket on November 3, 2024—sixteen days later. It is

implausible that the four-step IGRP Directive on grievances was completed in this short time span. What's more, Plaintiff's certification signature for the Complaint is dated October 18, 2023, the day of the incident. Presuming the accuracy of the signature date, Plaintiff could not have possibly received a grievance determination and appealed three times on the same day. The case is dismissed for failure to exhaust administrative remedies.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED. The Complaint is dismissed without prejudice for failure to exhaust administrative remedies, meaning that Plaintiff may reinstitute this lawsuit once he has exhausted administrative remedies or if he finds administrative remedies to be "unavailable" as described in Section A. The Clerk of Court is directed to mail a copy of this Order to Plaintiff and to close this case.

Dated: March 25, 2025
      New York, New York

                                           SO ORDERED.

                                           JESSICA G. L. CLARKE
                                         United States District Judge